## W. J. NOEL v. PYMATUNING M. F. INS. CO.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS OF MERCER COUNTY.

Argued October 16, 1889—Decided January 6, 1890.
[To be reported.]

(*a*) The defendant, a mutual fire insurance company issuing to its members a uniform five-years policy, unless otherwise directed, issued to plaintiff a policy for five years dated June 28, 1880. At the end of two years, the plaintiff returned the policy to the company to have a new one issued with $200 additional insurance.

(*b*) On July 12, 1882, a new policy was sent to the plaintiff, who put it away without examination. It was not dated, but on its face was the provision, "Insurance not to exceed 28th day of June 1885." On the

· Decision of Court below.

company's registry it was minuted as a five-years policy, and plaintiff paid all assessments upon it, including two for losses occurring after June 28, 1885.

1. In an action to recover for a loss by fire on February 9, 1887, the question was, not whether, under the evidence, the policy should be reformed to a five-years policy from July 12, 1882, on the ground of mutual mistake, but whether, as a question of fact, the limitation as to time was not a clerical error, and the actual intent of the parties the issuance and acceptance of a policy for five years.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 202 October Term 1889, Sup. Ct.; court below, No. 163 January Term 1889, C. P.

On December 26, 1888, W. J. Noel brought assumpsit against the Pymatuning Mutual Fire Insurance Company, incorporated by act of assembly of February 27, 1860, P. L. 88, to recover upon a policy of insurance upon his barn and certain personal property, to the amount of $1,200. The defendant pleaded non-assumpsit.

At the trial on February 16, 1889, the jury returned a verdict in favor of the plaintiff for $1,027.90. A rule for a new trial having been made absolute, the cause was again called on May 20, 1889, when at the close of the testimony, by agreement of the parties, it was submitted to the decision of the court, without the jury, under the act of April 22, 1874, P. L. 109.

On June 20, 1889, the court, MEHARD, P. J., filed the following decision :

### FINDINGS OF FACT.

The plaintiff is a farmer, residing in French Creek township, Mercer county, Pa.; the defendant is a corporation engaged in the business of fire insurance. Upon the application of plaintiff the defendant issued to him a policy of insurance, bearing date June. 28, 1880, to continue for five years, or until June 28, 1885. In 1882 (i. e., July 12th), the plaintiff informed the local agent of defendant company that he wanted an addition to that policy of $200 on his live stock. No formal or written application for the additional insurance was made, but the local agent, Mr. C. W. Heydrick, took the plaintiff's policy and sent it to the office of the company, with the

request that $200 insurance on the live stock of plaintiff be added to it. Thereupon the policy in suit was issued by the company defendant and returned to the agent, who delivered it to the plaintiff. This policy is without date, but contains the following limitation, viz.: "Insurance not to exceed 28th day of June, 1885." Usually the policies of this company were issued for five years, and it was a rule of the company that no policy should be issued for a longer term than five years; but they could be issued for a shorter term, and, at the request of the applicant, policies were issued for any number of years less than five. The entry made in the company's registry of policies did not indicate that it had been issued for a shorter than the usual term of five years. When the plaintiff received this policy he put it away without reading it. At that time he supposed it had been issued for a term of five years, and continued so to believe until after part of the property insured had been destroyed by fire.

The defendant is a mutual insurance company. It levies an assessment once a year to cover losses which have occurred up to that time. The plaintiff paid all assessments made on his policy prior to June 28, 1885, the date of its expiration, according to its terms. On August 20, 1885, the company defendant levied an assessment to cover losses for the preceding year, and assessed plaintiff's policy for losses which had occurred after as well as before June 28, 1885. Written notice and demand of this assessment was sent to plaintiff, who in due time paid the amount levied on his policy to defendant. Again, on August 20, 1886, the company levied an assessment for losses that had occurred during the preceding year, and assessed plaintiff therefor as though his policy were in life. This the company did in the belief that the plaintiff's policy was still subsisting, as the registry of policies would indicate. A written notice and demand of this assessment was sent to plaintiff, which also stated that the treasurer of the company would be at New Lebanon on Wednesday, October 27, 1886, to receive the assessments, and that no one else was authorized to receive the same. On that day, the plaintiff went to New Lebanon to pay his share of this assessment, but the treasurer of the company had gone away. C. J. Bell, a local agent of the company, was there, however, to whom the plaintiff paid the assessment

and who gave to plaintiff a receipt in the name of the treasurer of the company.

C. J. Bell had been with the treasurer at New Lebanon, assisting him during that day in making collections for the company. He received money from a great many persons and gave receipts therefor that day in the presence of the treasurer. After the treasurer went away, Bell remained and continued to receive and receipt for money for the company. Bell had been agent for the company since about 1880. When first appointed, his orders were to collect all money that he found owing to the company and to report it to the company. These orders were never changed. During all that time he had collected assessments for the company, and with its knowledge had receipted for the same in the name of the treasurer, and had made annual settlements and payments of such collections to the treasurer. No objection was at any time made to this course of conduct, by the treasurer or any other officer of the company. The assessment of 1884 had been paid by plaintiff's wife to Bell. The treasurer settled with Bell after the date of the fire which destroyed plaintiff's property, and received, without objection, all the money collected by Bell for assessments in the treasurer's absence, save that paid by plaintiff, and that was refused only because of the question as to the defendant's liability for the loss plaintiff had suffered. From these facts, it seems clear that C. J. Bell was authorized to receive assessments from policy holders, and, therefore, that payment to him was payment to the company. The last written authority given Bell by the company was "to take insurance and report the same as heretofore." In view of all the evidence, however, it is found that plaintiff paid the assessment of August 20, 1886, to the company defendant on October 27, 1886. On February 9, 1887, the property covered by this policy was destroyed by fire, whereby, it is admitted, the plaintiff suffered a loss for which defendant is liable, if at all, to the amount of $929.66, with interest from May 12, 1887.

At request of plaintiff the following additional facts are found, viz.:

1. The company marked this policy "discontinued" on its book after the fire had occurred, to wit: on February 26, 1887.

2. The defendant company made assessments on this policy

for all losses up to August 20, 1885, and up to August 20, 1886, in good faith, and in good faith the plaintiff paid them.

3. In so doing, both plaintiff and defendant acted on the belief that said policy was in living force for five years from the time it was issued, which includes the time when the fire occurred.

The propositions of fact submitted on behalf of defendant have already been passed upon in the foregoing finding, save the first three, which are considered mixed questions of law and fact, and therefore properly belonging to the next branch of this opinion.

### CONCLUSIONS OF LAW.

The policy sued on fixed June 28, 1885, as the date when it should expire. If this was the real contract of the parties, the plaintiff cannot recover unless the contract was thereafter renewed. The questions for consideration then are, first: Whether this policy embodies the contract the parties really made, as to the duration of the policy at the time it was issued, and if so, then second: Whether the parties agreed to a renewal of this policy so as to cover the time when plaintiff's loss occurred.

The policy must be taken prima facie to embody the contract the parties really made. If, through fraud, accident or mistake, it does not set forth truly the contract of the parties, it may be reformed; but the facts on which such a reformation may be made must be shown by clear, precise and indubitable proof: Thomas v. Loose, 114 Pa. 35. In this case, the allegation is that through mutual mistake this policy was written to expire June 28, 1885, whereas the contract of the parties was that it was to continue until June 28, 1887. It appears that plaintiff held an unexpired policy in defendant company at the time this one was issued, and that that policy was limited to expire on June 28, 1885. The plaintiff asked to have $200 of insurance on his live stock added to that policy. Nothing was said on either side as to the length of time this insurance was to continue. A new policy was issued covering the former insurance as well as the $200 additional, and it was made to expire at the time fixed by the original policy. In this there was no indication of mistake on either side, especially not on the part of the company.

It is urged that the company had a rule to issue policies for

five years, unless otherwise requested. This rule was not of a kind to necessarily form part of any policy the company might issue. Whether it formed part of this contract would depend on other facts than simply proof of its existence. There is no evidence that plaintiff knew of its existence. But, allowing it all the force that could be claimed for it, no inference could be drawn from any evidence in the case, that plaintiff intended to ask for, or that defendant intended to extend the insurance plaintiff already had when this policy was issued, two years beyond the limit fixed by the old policy. Plaintiff asked for $200 of insurance to be added to his policy, not that his policy be extended as to time. The defendant could not have changed the policy in that material part without plaintiff's consent, and that was not implied in the request plaintiff made.

It is true that when plaintiff received the policy sued on he supposed that it was for a term of five years from the date of re-issue, but that supposition was not the result of negotiations between the parties, nor had it been induced by the words or conduct of the defendant. A mistake such as would justify a reformation of this policy must be shown by what took place at and immediately before its execution: Stine v. Sherk, 1 W. & S. 202; Schettiger v. Hopple, 3 Gr. 54, 60. What took place between the parties after the delivery of the policy could not affect the contract represented by it, and is relevant to this part of our inquiry, only in so far as it sheds light on what had been agreed upon before the policy was written. The defendant registered this policy without indicating that it was to expire sooner than five years from the date of the registry. Two assessments were levied upon it by defendant and paid by plaintiff after the date of its expiration, both believing it to be still alive. But neither believed this because of anything the other had said or done in the course of their negotiations. It is probable the defendant was misled by the erroneous entry in its register. But, however that may have been, the proof is not clear, distinct and indubitable that, before the policy was written and delivered, the minds of the parties had met and fixed any term for the continuance of the policy other than that written in it. Hence it must be taken to embody the contract actually made.

Did the parties afterwards agree to extend the term of this

policy so as to cover the time when plaintiff's loss took place ? The only evidence relied on as showing such agreement is the levying and paying the assessments of August 20, 1885, and August 20, 1886. In so doing neither party was intending to renew an expired policy, but both erroneously supposed it was still alive. The assessments were levied, not with a view to the future, but only to the past. They were to pay losses which had already occurred, not to create a fund for those that might occur. The fact that plaintiff paid on losses for which he was not liable in 1885, did not bind him to pay on losses which might accrue in the future; nor did his payment of the assessment of 1886 bind him for another year, or for any other length of time. He had paid it in mistake, and not to renew the contract; and the company received it ignorant of the fact that plaintiff's policy had expired on June 28, 1885. This was not a proposal by one assented to by the other. There was a mutual misapprehension, rather than the concurrence of minds essential to a contract. The policy was, therefore, not renewed.

It would unduly lengthen this opinion to undertake a discussion of the authorities cited by the learned counsel for plaintiff. The strongest of these in his favor are Good Intent Co. v. Hartzell, 22 Pa. 277, and Buckley v. Garrett, 47 Pa. 204. The main fact in both those cases was, that the parties acted with full knowledge of the facts relied on to avoid recovery, while the contrary is true in the case at bar.

It is, indeed, unfortunate that a worthy man, acting in good faith and resting in the confidence that his property is protected by insurance, should find himself mistaken when it is too late; and it is certainly to be regretted that at least partial compensation cannot be added to the sympathy of neighbors and friends, in which we cordially join.

And now, June 20, 1889, it is ordered that judgment be entered for defendant for costs, unless exceptions be filed within thirty days after service of notice hereof on the plaintiff.

Both the plaintiff and the defendant filed exceptions to the foregoing decision, the plaintiff's exceptions specifying that the court erred, inter alia, as follows:

1. In not finding as a fact that C. W. Heydrick, agent of

Decision of Court below.

defendant company, made application for the policy of insurance in controversy as a new policy, and not for $200 to be added to the old one.

By the court: Refused and overruled.[1]

2. In not reporting and finding as a fact that the policy in controversy was living and in full force until discontinued by the company on February 26, 1887, and was in full force at the time of the loss.

By the court: Refused and overruled.[2]

3. In not finding as a matter of law that the defendant company, under the facts in this case, was estopped from denying the validity of the policy for the loss, as the company treat the policy as valid for assessments and void for the payment of losses.

By the court: Refused.[3]

4. In not finding as a matter of law that if there was such a mutual mistake on the part of the company and the insured, as to the expiration of the policy, as would entitle the plaintiff, under the facts of this case, on discovering the error before loss is incurred, to demand an amended policy for five years from its date, or any other extended period beyond the date of the loss, then the plaintiff was entitled to recover.

By the court: The conclusion reached in the opinion filed was that there was not such mutual mistake as this exception supposes. It is therefore not sustained.[4]

5. In not finding as a matter of law, that if the plaintiff and defendant company continued to act under the terms of this policy after it had expired, without objection by either party, and assessments were made and paid, that this concluded the defendant company from denying its liability at least during the current year for which assessments had been made on this policy.

By the court: Not sustained, in view of the facts as found.[5]

6. In not finding as a matter of law, that the levying of assessments upon this policy by the defendant and the payment of the same without objection by the plaintiff, after the expiration of the policy, if it was not a continuation of the policy and a renewal of the same, it would have the effect of an order to insure, upon which the plaintiff could maintain an action of assumpsit on the contract remaining in parol, and recover from the defendant.

Answer: Refused.[6]

7. In not finding as a matter of law that there was a mistake in inserting June 28, 1885, as the date of termination of the policy.

Answer: Refused.[7]

Said exceptions having been disposed of severally as indicated, on August 19, 1889, judgment was entered in favor of the defendant, when the plaintiff took this writ, specifying that the court erred:

1–7. In overruling plaintiff's exceptions.[1 to 7]

8, 9. In directing judgment to be entered for the defendant, and in not directing judgment to be entered for the plaintiff for $929.66, with interest from May 12, 1887.

*Mr. James A. Stranahan* (with him *Mr. H. B. Bowser*), for the appellant:

1. But two exceptions are taken to the findings of fact. The first is, not finding as a fact that C. W. Heydrick applied for a new policy for the plaintiff, and not for $200 to be added to the old one. From the testimony of W. J. Noel and C. W. Heydrick, and the further fact that a new policy was issued and sent to Mr. Noel, it is clear that the court erred in not finding the fact as requested. The second assignment of error involves the whole question in the case: Was this policy in force at the time of the loss? The date, June 28, 1885, must have been inserted in the policy by mistake, as the records of the company fully show. The official action of the company recognized the policy as in full force February 26, 1887, when it was marked " discontinued."

2. Further: the action of the company and the acquiescence of both parties kept the policy alive. If by its terms the policy expired on June 28, 1885, an assessment upon it in August, 1885, and another in August, 1886, for all losses to August 20, 1886, would renew it at least for the current years, to June 28, 1886, and to June 28, 1887, if not for the full period of five years, or to July 12, 1887. This is the rule that would apply to other contracts, and the same rule applies to contracts of insurance. As the defendant . company considered the policy valid for assessments, it should not hold it void for losses, es-

pecially when the plaintiff acted in the utmost good faith and paid all the assessments upon it. This would estop the defendant from denying liability: Luciani v. Insurance Co., 2 Wh. 167.

3. The case cited, decides two propositions of importance in this case: First, that a policy of insurance stands on the footing of an expired lease; and, second, that previous insurance may be continued by payment of premium only. And in Buckley v. Garrett, 47 Pa. 204, it was held, " that such waivers and consequent estoppels may exist, is not only proved by authority, but is founded on reason. There is no reason why the same principle of natural justice should not be applied to a contract of indemnity by insurance, which affects all other contract relations. It is a matter of good faith. After a policy was forfeited by a violation of one of its conditions, the company received and accepted assessments on the premium note ; held to be a waiver: Viall v. Genessee Mut. Ins. Co., 19 Barb. 440." When parties continue to act under their contract, the tacit agreement to be bound by it is as strong as any express renewal could make it: Good Intent Co. v. Hartzell, 22 Pa. 277 ; Royal Ins. Co. v. Beatty, 119 Pa. 9 ; Luciani v. Insurance Co., 2 Wh. 173.

*Mr. S. F. Thompson* (with him *Mr. Samuel Redmond*), for the appellee :

The material facts in this case all appear in the decision of the court below, and under the submission act of April 22, 1874, the Supreme Court will hear and determine only questions of law arising upon bills of exception to the rulings thereon: Griffith v. Sitgreaves, 90 Pa. 161; Southern Md. R. Co. v. Moyer, 125 Pa. 506. The facts in the case raise but two questions :

1. Does the policy set forth the contract really made by the parties, as to the duration of the policy, at the time it was issued? The court rightly refused to find as a fact that a mutual mistake was made by the parties in inserting June 28, 1885, as the date of the termination of the risk, and that refusal virtually decides this first question. The instrument itself is strong evidence, to be overcome only by the testimony of two witnesses, or of one witness, corroborated by circum-

stances equivalent to another: Phillips v. Meily, 106 Pa. 536; Thomas v. Loose, 114 Pa. 35. No written instrument can be reformed on proof of a mistake, unless it be of a mistake of both parties: Cooper v. Insurance Co., 50 Pa. 299; and it must be shown by proof of what occurred at and immediately before the execution of the writing: Stine v. Sherk, 1 W. & S. 195; Schettiger v. Hopple, 3 Gr. 54, 60; Martin v. Berens, 67 Pa. 459; and if the evidence is not clear, precise and indubitable, it should be withdrawn from the jury: Miller v. Smith, 33 Pa. 386; Martin v. Berens, supra; Columbia F. Ins. Co. v. Bolton, 2 Pears. 222.

2. Did the parties agree to a renewal of this policy, so as to cover the time when the plaintiff's loss occurred? An express renewal is not alleged, and the court below found "that until after plaintiff's loss had occurred on February 9, 1887, both the plaintiff and defendant company were ignorant of the fact that plaintiff's policy had expired on June 28, 1885." The fact of a waiver of a condition or limitation in a policy is a question for the jury: Coursin v. Insurance Co., 46 Pa. 323. There must be a knowledge of facts to establish a waiver, which never occurs unless intended, and even then only during the continuance of the contract: Diehl v. Insurance Co., 58 Pa. 443. Moreover, a policy cannot be renewed or revivified, except by an express agreement of the insurers: Carroll v. Insurance Co., 38 Barb. 402; Diehl v. Insurance Co., 58 Pa. 443; and a formal cancellation of the policy on the books of the company was not required, as the records of the company were binding in no way upon the plaintiff: Farmers M. Ins. Co. v. Wenger, 90 Pa. 220.

OPINION, MR. JUSTICE WILLIAMS:

The appellee is a mutual fire insurance company, issuing a uniform policy, unless otherwise specially requested, to all its members, for the term of five years. Noel, the appellant, was a member having a policy for five years on his barn and contents for $1,000. When his policy had been running a little over two years, he applied for $200 additional insurance on the contents of his barn, and, at the suggestion of the agent, surrendered his policy in order that a new one might issue for the whole amount of insurance needed. A new policy for

$1,200 was issued and returned to Noel, who laid it away with out opening it. It was issued about July 12, 1882. On February 9, 1887, the barn and much of the contents burned. Notice was given to the company, and two of its officers came to adjust the loss. Examining the policy, they found that it had not issued for five years, or three years, or any other number of full years, but to expire on June 28, 1885. On the register of the company it appeared to have been entered as a five-years policy, and two assessments had been levied, and paid by the assured, after June 28, 1885, and before the fire. It appeared, therefore, that both insurer and assured understood the policy to be issued in the usual form, and had acted upon that understanding. An action was brought upon the policy, and defence was made upon the provision that it should expire on June 28, 1885. The plaintiff below asked the court to find that the provision was inserted by mistake, and to reform the contract in accordance with the understanding of both the parties to it. The court regarded the evidence as insufficient to justify such finding, and held that the policy expired on June 28, 1885.

How did the evidence stand on this question? There was first the fact that no change in the duration of the policy was asked for. There was then the uniform practice to make no variation from the five-years term unless it was asked for. There was the fact that the policy was entered on the register at the time it was issued as a five-years policy, and the fact that it was assessed for two successive years after the date of expiration written in it. This evidence tended strongly to show that the person who filled out the policy had written into it the date of the expiration of the canceled policy by mistake, and that it was the intention of the company to issue, as it was the expectation of the insured to receive, a policy issued in the ordinary manner and for the ordinary term. There was nothing to account for the deviation from the daily practice, or to show that either party desired or intended it, except the fact that such deviation appeared on the face of the policy. But the entry upon the register, made the same day, shows that the company did not understand that any deviation from the common practice had been made. It was entered as a five-years policy, and so understood and treated by the com-

pany and by Noel until the fire occurred. The best evidence of what the parties understood the contract to be, is afforded by what they did in pursuance of it at the time it was made, and afterwards. This shows clearly that the minds of the contracting parties were never together upon the terms of the contract as written, and that neither party knew that the limitation was inserted in it. We have, then, a case in which both parties intended a contract in a given form, viz., the common five-years form of policy. Both parties understood it to be drawn as intended. Both parties acted in good faith upon that understanding until the loss occurred. Then, when the plaintiff asks for the indemnity for which he had contracted, as he and the company both understood their contract, the limitation in the policy is discovered, and set up as a reply to his demand. To this the plaintiff answers that the limitation was inserted by mistake; that it was not in accordance with the intention of the parties when the contract was made, or their understanding of it afterwards. This question was for the jury.

There was evidence competent, and, as we think, sufficient, to justify a verdict in accordance with the plaintiff's position, and the reformation of the policy. The learned judge of the court below mistook the question when he said: " In this case the allegation is that through mutual mistake this policy was written to expire June 28, 1885." The allegation is that the mistake was made by the person who filled up the blanks in the printed policy, and that it escaped the notice of both parties until an examination of the policy, made after the fire, disclosed it. That this was true as to the insurance company, appeared by the entry of this policy on its register as a five-years policy, and by its uniform treatment of it as such. That it was true as to the plaintiff, appears by his payment of two annual assessments after the date written into his policy as the time of its termination. The learned judge concedes that both parties believed the policy to be in force as a five-years policy, but says: "Neither party believed this because of anything the other had said or done in the course of their negotiations." We think this conclusion was also mistaken. The agent of the company suggested to the insured to apply for a new policy as the best way to secure the increased insurance desired. A

new policy was applied for in the usual manner, and the old one surrendered. The new one was issued with no notice of any change in the form of policy. All that was said and all that was done looked to a policy for five years. The belief of both parties that it was such a policy rested on, and was induced by, what was said and done in the negotiations that led up to its execution.

The existence of the written limitation in the policy, notwithstanding the belief of both parties that it was issued in the common form, could be accounted for on the supposition that the person by whom the blanks were filled had the old policy open before him for the purpose of copying the description of the property from it into the new, as no new written application had been furnished, and had thoughtlessly copied the date of its expiration also. Without noticing what he had done, he might then have entered the policy upon the register as he supposed it to be. The subsequent delivery of the policy without comparing it with the register, left no means for detecting the mistake in the office of the company, and, as the policy was not opened by the insured, the mistake was not discovered by him. The question of mistake was for the jury.

> Judgment reversed, and a venire facias de novo awarded.